Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*



FILED

APR 0 1 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark Aussieker,<br><br>        Plaintiff,<br><br>v.<br><br>MORTGAGE BANK OF CALIFORNIA<br><br>        Defendant(s) | No. 2:19CV 0561 MCE KJN<br><br>**COMPLAINT FOR DAMAGES**<br>Trial by Jury not requested |

Plaintiff MARK AUSSIEKER ("Plaintiff"), on behalf of himself alleges as follows:

    1.    Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act "TCPA", 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

    2.    Upon information and belief, Defendants have jointly and severally placed telemarketing calls to a telephone number Mr. Aussieker had registered on the national Do Not Call Registry without Mr. Aussiekers consent. As a result, Defendants

1

are liable for those calls.

## PARTIES

3. Plaintiff Mark Aussieker is an individual and resident of the state of California.

4. Defendant MORTGAGE BANK OF CALIFORNIA, INC is a Deleware Corporation that registered with secretary of state of California to conduct business in California. MORTGAGE BANK OF CALIFORNIA, INC is a "person" as defined by 47 US.C. § 153 (39). Will be reffered to as "MORTGAGE BANK"

5. Does 1-10 defendants are sued herein pursuant to the provisions of Section 474.

### Jurisdiction & Venue

6. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

7. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

9. This Court has personal jurisdiction over the parties because Defendants systematically and continually have conducted business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and his claims arose out of his contact with Defendants from California.

## Statutory Background

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. Any person whose receives a phone call from in violation 47 U.S.C. § 227(b)(1) (A) can sue the violator and seek statutory damages. 47 U.S.C §227(b)(3)(B)

12. The following passage cites the code which allows the plaintiff to sue the defendant and seek the statutory damages: 47 U.S.C. § 227(b)(1) (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the federal government."

13. Automatic Telephone Dialing System, which the statute defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 USC 227(a)(1). Notwithstanding this limited definition, the Ninth Circuit ruled in Marks v. Crunch San Diego, LLC that an ATDS means more than what the statute says. The question is whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a

stored list."

14. The Court answered in the affirmative merely that if the dialer dials numbers from a stored list, it is considered an ATDS. Marks decision is now the law of the land in the 9th circuit as of February 19th after the parties settled.

15. All a plaintiff needs to show is that a call or text message was made using an auto dialer to a number assigned to cellular service, or that the calling party was charged for the call. In this case, plaintiff received a text message on his cellular phone where he was both charged for the call and call was made to a number assigned for cellular service.

16. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id* No agreement is in place.

17. The intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct

## Common Allegations of Fact

18. Plaintiffs phone number 916-705- 8006 is a cellular telephone

19. Plaintiffs phone number has been on the do not call list since 2003.

20. One of the newer types of inexpensive marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows for short text messages to be sent from one cell phone to another or from the internet to a cell phone.

21. An "SMS message" is a text message call[1] directed to a wireless device through

---

[1] The Ninth Circuit in Satterfield noted this technological issue and without further discussion determined that a "call" could include an SMS message. See Satterfield,569 F.3d at 954; see also Joffe, 121 P.3d 831. FCC further clarified In re

4

the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

22. Unlike more conventional methods of advertising like mailers or radio ads, SMS messages, and particularly unauthorized messages, invade privacy and actually cost plaintiff money, because he incurs a usage allocation deduction from the total amount of data allowed under his cell phone plan.

23. Defendants use this new technology to create "mobile alerts," or recurring programs in which text messages are automatically sent en masse to persons within thier database.

24. Gary Zuminski informed plaintiff on 3/27/19 that he was not responsible sending any text messages, Defendant's marketing department used a database of loan officers or mortgage company owners.

25. On May 15th of 2018 and July 24th 2018, Defendant undertook a misguided effort to increase sales by causing the mass transmission of unauthorized text messages advertisements in the form of mobile alerts to the cell phones to lenders whom it hoped would broker loans for Defendant.

26. Plaintiff is not a lender.

27. Recurring mobile alerts are subject to the TCPA and the same regulations promulgated by the FCC as other automated calls or text messages to cellular telephones.

28. On February 26th, 2019 , Defendant undertook a misguided effort to increase sales by causing the mass transmission of unauthorized text message advertisements in the form

---

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003) (the "2003 Order"). This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service

5

of mobile alerts to the cell phones to consumers whom it hoped would seek loans from Defendant.

29. On March 27th, 2019- Plaintiff called the number that was displayed as the originator of the text messages. During that call, the representative of the company made the following admissions:

    a. MORTGAGE BANK OF CALIFORNIA sent text messages to plaintiff.

    b. "plaintiff was on the automated system, and there was nobody to yell at or hold accountable."

    c. Defendant used an automated system to send out messages.

    d. All calls were being recorded.

    e. All marketing was done in house

    f. Speculated that Defendant had permission to call Plaintiff based upon an email that was previously sent or produced.

    g. Defendant did not have a signature from plaintiff per 47 C.F.R. §64.1200(f)(8) that authorized the text messages.

30. Text messages can not exceed 164 characters

31. The text message on May 15th of 2018 consisted of 492 characters into four messages . The message read

> (1/4) Hello Mark. Good day! My name is Jyndette Alipio and I am reaching out on behalf of Gary Zumski the Director of Wholesale Operations at MetroFund. He (2/4) wanted me to let you know we just launched an amazing 100% FHA financing loan available for Mortgage Brokers which we underwrite, process and fund in (3/4) house. I wanted to set up a time so you could speak with him about this program and get you set up as an approved broker. Is today or tomorrow better for (4/4) you?

32. The text message on July 24th 2018 consisted of 2 messages in 328 Characterss. It read:

> (1/3) Hello Mark, my name is Jyndette Alipio and I am reaching out on behalf of Gary Zumski the Director of Wholesale Operations at MetroFund. He wanted me to (2/3) let you know we just launched a 90% LTV Stated Income Program to $1.5 million loan amount with a credit score as low as 680. We also have No Doc Investor

```
2:48
← (310) 340-6185
Tuesday, Jul 24 · 10:53 AM

(1/3) Hello Mark, my name is Jyndette
Alipio and I am reaching out on
behalf of Gary Zumski the Director of
Wholesale Operations at MetroFund. He
wanted me to

(2/3) let you know we just launched
a 90% LTV Stated Income Program to
$1.5 million loan amount with a credit
score as low as 680. We also have No
Doc Investor
```

33. The text message on February 26th, 2019 was received as one message and contained 420 characters.

> Hello Mark, Are you still thinking about purchasing a home or refinancing? With interest rates rising and more increases on the

7

horizon,now may be the very best time. If you are planning to use the equity in your home, if you are facing an adjustable rate or if you want to buy before rates make it unaffordable, we can help. Would you like to speak to a loan specialist to go over your needs?

34. A total of 7 text messages were sent to defendant.

35. Mr. Aussieker's concrete injury as it relates to the *Spokeo* decision is loss of productivity for answering the call, decreased battery life, could not listen to music while on the phone, the nuisance of receiving a telephone call and having to wait for the other party to pick up the phone, defendants bothering him with unrequested solicitations.

36.

## CAUSES OF ACTION

### . COUNT 1

Violation of the Telephone Consumer Protection Act, 47 U.S.C.

§227(c)(5)(B)

37. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

38. Defendant's own conduct and/or by the fact that others made those calls / texts and ignoring the Do-Not-Call List, as demonstrated by Defendant's text message calls to

8

Plaintiffs cell phone, violated 47 U.S.C.§227(c)(5)(B) and 47 C.F.R. §64.1200(d) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for each of the seven violations for a total amount $3,500.

39. Defendant's own conduct and/or by the fact that others made those calls on its behalf, in failing to check the numbers against a do not call list constitutes a knowing and/or willful violation of 47 U.S.C. §227(c)(5)(B) and 47 C.F.R. §64.1200(d)(2) and 47 C.F.R. §64.1200(e). Plaintiff is entitled to an award of statutory treble damages in the amount of $10,500 for the seven violations.

## COUNT 2

**(1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii)** – Auto Dialer

40. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

41. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for each of the seven violation.

42. As a result of Defendants admission that the text messages were automatically sent, which constitutes Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to a total award of $10,500.00 in statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C). This amount is calculated by taking $500x 7x3- $10,500.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against MORTGAGE BANK INC, INC, for the following:

1. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future.

2. For an order finding in favor of Plaintiff, on all counts asserted herein;

3. For an order awarding statutory damages to plaintiff in amount of $21,000 as detailed in counts 1 and 2.

4. Any other relief the court deems proper.

5.

Respectfully Submitted this 1st Day of April, 2019.

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 4-1, 2019.
Signature of Plaintiff
_____
Printed Name of Plaintiff MARK Aussicke

10